UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :
                                             **INDICTMENT**
              -v-                 :
                                            07 CRIM 355
TIMOTHY KHAN,                     :

              Defendant.          :

- - - - - - - - - - - - - - - - x

## COUNT ONE

(Securities Fraud)

The Grand Jury charges:

**Relevant Persons and Entities**

1.  At all times relevant to this Indictment, Gucci Group ("Gucci") was a company engaged in the manufacture and sale of luxury retail items, including clothing, handbags, and jewelry. As of the beginning of 1995, Gucci was wholly owned by Investcorp, an investment management company originally incorporated in Bahrain. In or about October 1995, Gucci's stock was sold publicly in an initial public offering ("IPO") on the New York and Amsterdam Stock Exchanges. In or about July 2004, Gucci became a wholly owned subsidiary of PPR, a French retail and luxury goods company, and was delisted from the New York and Amsterdam stock exchanges.

2.  At all times relevant to this Indictment, TIMOTHY KHAN, the defendant, was a citizen of Canada resident in either Los Angeles, California or London, England.

3. At all times relevant to this Indictment, Victim #1 was a partner in an investment firm located in the United States.

**The Fraudulent Scheme**

4. From in or about October 1995, up to and including in or about April 2007, TIMOTHY KHAN, the defendant, engaged in a scheme to obtain approximately $7 million from Victim #1 through false representations about a purported investment in options to purchase stock of Gucci.

5. Beginning in about October of 1995, TIMOTHY KHAN, the defendant, represented to Victim #1 that KHAN was on the Advisory Board of Investcorp, which at that time owned Gucci. After Gucci's stock was sold publicly in an IPO, KHAN represented to Victim #1 that he was on the Advisory Board of Gucci, and that he had been put on that Advisory Board in order to help turn around the company, which had been struggling, and to distribute its products worldwide. KHAN represented to Victim #1 that because of his position on the Advisory Board of Investcorp and then Gucci, he had an opportunity to obtain options to purchase Gucci stock at a price discounted from that offered in the Gucci IPO. KHAN initially informed Victim #1 that he could purchase the stock at $7.50 per share, then later informed Victim #1 that he could purchase that stock for $14.00 per share. KHAN also represented to Victim #1 that Gucci's stock would be sold during

2

the IPO for a price between $18 and $22 per share. KHAN told Victim #1 that he was working on this deal with the Chief Executive Officer ("CEO") and the Chief Financial Officer ("CFO") of Gucci, both of whom KHAN identified by name.

6. During late 1995 and 1996, TIMOTHY KHAN, the defendant, provided Victim #1 various documents that purported to support his claim that he was on the Advisory Board of Investcorp and then Gucci, and that he had access to options to purchase Gucci stock at $7.50 and $14.00. Several of these documents purported to be agreements signed by the person who was the CFO of Gucci from 1995 to 2004.

7. During late 1995 and 1996, TIMOTHY KHAN, the defendant, directed Victim #1 to wire approximately $2.8 million to KHAN in order to fund the purported investment in Gucci stock options described in paragraphs 5 and 6 above. In accordance with those directions, on or about December 1, 1995, Victim #1 wire-transferred $1.4 million from an account maintained in New York, New York to an account in the name of Khan Investcorp Holdings, Ltd., maintained at a bank located in Los Angeles, California; and on or about December 18, 1996, Victim #1 wire-transferred another $1.4 million from an account in New York, New York to an account in the name of Khan & Company, Inc. maintained at a bank in Los Angeles, California.

8.  In or about October 1995, Gucci's stock went public in an IPO on the New York and Amsterdam Stock Exchanges at $22 per share. In or about March of 1996, Gucci issued a secondary offering of its stock at $48 per share, and in March of 1999 Gucci issued additional stock at $75 per share. In or about July 2004, PPR purchased all outstanding publicly traded shares of Gucci for approximately $85 per share, and Gucci became a wholly owned subsidiary of PPR.

9.  Beginning in 1996, Victim #1 repeatedly told TIMOTHY KHAN, the defendant, that Victim #1 wanted KHAN to exercise the Gucci stock options he purchased, sell the stock, and deliver the proceeds from those sales to Victim #1. From 1996 through April 2007, KHAN provided various excuses to Victim #1 as to why he could not complete these steps, including, among others, the following: a) that the investment bank that underwrote the Gucci IPO did not want individuals associated with Gucci (which KHAN claimed to be) to sell the stock purchased pursuant to the stock options; b) that Louis Vuitton, another designer retail company, was in the process of acquiring Gucci, which had delayed distribution of the proceeds of Victim #1's investment; c) that various expenses needed to be paid in order to exercise the options and sell the stock; and d) that an entity called the European Union Taxation Authority located in Brussels,

4

Belgium was delaying the distribution of the proceeds from the investment because of certain tax obligations.

      10.  In support of the claims of TIMOTHY KHAN, the defendant, described in paragraph 9, KHAN provided to Victim #1 between 1996 and 2006 various documents that purport to bolster KHAN's claims he was connected to Gucci, to modify the investment, or to explain the delay in Victim #1 receiving the proceeds of his investment.  These documents include, among others, the following: a) a document dated March 19, 1999 purportedly signed by the CFO of Gucci stating that KHAN served on the Advisory Board of Gucci and "was responsible for business development and to assist Gucci to form new alliances for the expansion of the worldwide distribution network" and that Gucci has agreed to buy-out the options held by KHAN at $85.00 per share; b) a letter on Gucci letterhead dated September 21, 2000, purportedly signed by the CFO of Gucci and addressed to KHAN, stating, in substance and in part, that certain funds would be distributed after resolution of a dispute between Louis Vuitton and Gucci; c) letters on Gucci letterhead dated January 15, 2003, and January 24, 2003, purportedly signed by the CFO of Gucci and addressed to KHAN, offering additional options to purchase Gucci stock at a discounted price; and d) letters purportedly from an entity entitled the "European Union Taxation Authority," dated November 9, 2005 and May 2, 2006 addressed to KHAN, stating that

certain tax liabilities must be satisfied before the proceeds of the sale of Gucci stock can be released.

11.  From 1998 through May 2006, TIMOTHY KHAN, the defendant, requested that Victim #1 provide KHAN additional funds in order, among other things, purportedly to invest further in options to buy Gucci stock and to pay certain expenses, loans, and tax liabilities associated with the Gucci investment.  In accordance with those requests, between 1998 and May 2006, Victim #1 wired an additional approximately $4.5 million to KHAN, including numerous wires from accounts in New York, New York to California and the United Kingdom ("UK").  As of April 2007, Victim #1 has received no funds from this investment.

12.  In truth and in fact, at all times relevant to this Indictment, TIMOTHY KHAN, the defendant: a) was never on an Advisory Board associated with Gucci; b) never worked with the CFO or CEO of Gucci in connection with a Gucci stock option offering; and c) was not offered options to purchase Gucci stock at the discounted prices of $7.50 or $14.00 per share.  Moreover, in truth and in fact: a) the CFO of Gucci from 1995 to 2004 never signed any agreements with, or sent letters to, KHAN, including the documents described in paragraphs 6 and 10 above; and b) the "European Union Taxation Authority," which purportedly sent letters to KHAN described above in paragraph 10 setting forth certain tax obligations on the Gucci investment, does not exist.

**Statutory Allegation**

13. From in or about October 1995 through in or about April 2007, in the Southern District of New York and elsewhere, TIMOTHY KHAN, the defendant, unlawfully, willfully, and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons in connection with the purchase and sale of stock and options to purchase stock of Gucci Group.

(Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2).

**COUNTS TWO THROUGH SIX**

(Wire Fraud)

The Grand Jury further charges:

14. The allegations contained in paragraphs 1 through 12 of this Indictment are repeated and realleged as if fully set forth herein.

15. On or about the dates set forth below, in the Southern District of New York and elsewhere, TIMOTHY KHAN, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, to wit, a scheme to obtain approximately $7 million through fraud as part of a purported investment in options to purchase stock in Gucci Group, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, the following signs, signals, and sounds for the purpose of executing such scheme and artifice:

| COUNT | APPROXIMATE DATE | WIRE COMMUNICATION |
|---|---|---|
| 2 | January 24, 2003 | Wire transfer of $20,000 from an account in New York, New York to an account in the United Kingdom |
| 3 | February 7, 2003 | Wire transfer of $1.75 million from an account in New York, New York to an account in the United Kingdom |

8

| 4 | March 2, 2004 | Wire transfer of $350,000 from an account in New York, New York to an account in the United Kingdom |
| 5 | September 20, 2004 | Wire transfer of $195,000 from an account in New York, New York to an account in the United Kingdom |
| 6 | November 10, 2005 | Wire transfer of $449,020 from an account in New York, New York to an account in the United Kingdom |

(Title 18, United States Code, Sections 1343 and 2.)

**FORFEITURE ALLEGATION**

16. As a result of committing securities fraud and wire fraud as alleged in Counts One through Six of this Indictment, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Sections 1343 and 2, TIMOTHY KHAN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to a sum of money equal to $7 million in United States currency, representing the amount of money fraudulently obtained as a result of the securities and wire fraud schemes alleged in this Indictment.

Substitute Asset Provision

17. If any of the forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981(a)(1), 982, and Title 28, United States Code, Section 2461).

_____  
FOREPERSON

_____  
MICHAEL J. GARCIA  
United States Attorney

10

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

- v -

**TIMOTHY KHAN,**

**Defendant.**

---

**INDICTMENT**

07 Cr.

15 U.S.C. §§ 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
18 U.S.C. §§ 1343 and 2

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

_____
Foreperson